# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **ROGER A. POWELL,** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| v. | : | |
| | : | |
| **PNC BANK,** *et al.*, | : | No. 18-3596 |
| *Defendants* | : | |

## MEMORANDUM

PRATTER, J.                                                                                           SEPTEMBER 11, 2019

Roger Powell's story is unfortunately familiar. In 2008, with the American economy experiencing a significant economic downturn, Mr. Powell found himself unemployed and unable to keep up with his mortgage payments. Despite his attempts to participate in federal programs aimed at helping homeowners avoid foreclosure, Mr. Powell's efforts fell short. Ultimately, his home was sold at a sheriff's sale. The question here, however, is not whether Mr. Powell's circumstances are regrettable. Instead, the Court must decide whether Mr. Powell's claims against his mortgage holder—PNC Bank—and mortgage servicer—Wells Fargo Bank—are actionable and adequately pleaded. Because the Court concludes that Mr. Powell does not have standing to bring his claims, the Court must dismiss the complaint.

### FACTUAL BACKGROUND[1]

Roger Powell purchased his home in Harleysville, Pennsylvania in 2006. To finance the purchase, Mr. Powell took out a mortgage with PNC Bank, which in turn used Wells Fargo as an "Agent/Servicer" of the mortgage.

---

[1]    The Court accepts as true all facts as set forth in the Amended Complaint and supporting exhibits.

1

In 2008, Mr. Powell's employer went out of business. Mr. Powell—a mechanical engineer—was unable to find work in his profession, and instead took a job in retail, along with a 30% pay cut. Around the same time, "serious medical circumstances" affected Mr. Powell, eventually causing him to lose his retail position. Mr. Powell continued to pay his mortgage until he eventually exhausted his savings. He also attempted—unsuccessfully—to sell his home, and he was unable to refinance his mortgage.

At some point thereafter, Wells Fargo contacted Mr. Powell and provided him with an application for the Federal Making Home Affordable (MHA) program. To be eligible under the MHA program, Wells Fargo required Mr. Powell to miss two consecutive mortgage payments before applying. Mr. Powell complied and then submitted his application, which was accepted for evaluation. Mr. Powell next attempted to continue making mortgage payments to Wells Fargo. But Mr. Powell appears to have made only his monthly payment (as opposed to paying off his full outstanding balance), and so in January, 2015, Wells Fargo rejected the payment. Wells Fargo stated that "[b]ecause this payment [wa]s less than the total amount due reflected on [Mr. Powell's] reinstatement quote," Wells Fargo was "unable to apply these funds to [Mr. Powell's] account." Amended Compl., Ex. E.

Other problems arose during Mr. Powell's MHA application process, including broad issues as well as issues specifically concerning Mr. Powell's application. First, Mr. Powell identified several universal issues with Wells Fargo's review of MHA applications. Mr. Powell observed "a great number of computation errors, 'lost' paperwork, apparent ineptitude, and delays[.]" Amended Compl. at 3. Further, Mr. Powell learned that Wells Fargo was using more stringent criteria to review MHA applicants when compared to the metrics used by PNC Bank.

Wells Fargo only accepted applicants with a Debt-to-Income ratio between 25% and 42%. PNC Bank, however, accepts applicants with a Debt-to-Income ratio between 10% and 55%.

Second, Mr. Powell's MHA application in particular encountered various issues, culminating in its rejection. Initially, Wells Fargo rejected Mr. Powell's MHA application after determining that his Debt-to-Income ratio was below 25%. Mr. Powell notified Wells Fargo that its calculation was incorrect, however, and the bank eventually proceeded with Mr. Powell's application.

Mr. Powell's MHA application was again denied—this time conclusively—in a November 30, 2016 letter.[2] Wells Fargo sent a letter dated December 13, 2016 denying an appeal, and Mr. Powell's loan was removed from review on December 22, 2016. *See* Amended Compl., Ex. J (describing appeal denial). Nonetheless, on December 18, 2016, Mr. Powell sent Wells Fargo a letter raising various grounds on which he sought to appeal the November 30, 2016 denial. *See* Amended Compl., Ex. H. On February 16, 2017, Wells Fargo wrote to Mr. Powell, responding to each individual argument supporting the appeal. *See* Amended Compl., Ex. J. Among other things, Wells Fargo reiterated that it had denied Mr. Powell's application for two reasons: (1) because Wells Fargo would not be able to reduce his "monthly principal and interest payment" by at least 10%, and (2) because Mr. Powell's account had a negative "Net Present Value." *Id.* On March 3, 2017, Mr. Powell responded to Wells Fargo's February 16, 2017 letter, reiterating and expanding on his previous criticisms of the review of his MHA application. *See* Amended Compl., Ex. F. On May 5, 2017, Wells Fargo answered Mr. Powell, sequentially addressing each of Mr. Powell's critiques. *Id.*

---

[2] The complaint does not clearly identify the timeline of events following the denial of Mr. Powell's MHA application. The correspondence between Mr. Powell and Wells Fargo, which is attached to the amended complaint, describes the parties' interactions.

Eventually, Mr. Powell's home was sold at sheriff's sale in Montgomery County, Pennsylvania.

## LEGAL STANDARD

A *pro se* pleading must be "liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Bieros v. Nicola*, 839 F. Supp. 332, 334 (E.D. Pa. 1993) ("[A] court must construe *pro se* complaints liberally[.]"). *Pro se* litigants are "held to 'less stringent standards' than trained counsel." *Benckini v. Hawk*, 654 F. Supp. 2d 310, 316 n.1 (E.D. Pa. 2009) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Court stands prepared to "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999) (citations omitted).

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "to give the defendant fair notice of what the claim is and the grounds upon which it rests," the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotations, and alteration omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). The question is not whether the claimant "will ultimately prevail on his . . . claim, but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v.*

*Switzer*, 562 U.S. 521, 530 (2011) (citations and quotation omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Pa. Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (citations omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. The Court must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citation and quotation omitted). Also, the Court must "accept as true" all reasonable inferences emanating from the allegations, and view those facts and inferences "in the light most favorable to the non-moving party." *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989) (citation omitted).

That admonition does not demand that the Court ignore or even discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (citations and quotations omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). If a claim "is vulnerable to [Rule] 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citations omitted).

In addition to the pleading requirements imposed by Rules 8 and 12(b)(6), a plaintiff's complaint must also be justiciable. "Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). "Subsumed within

this restriction is the requirement that a litigant have standing to challenge the action sought to be adjudicated in the lawsuit. Standing has constitutional and prudential components, both of which must be satisfied before a litigant may seek redress in the federal courts." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (citations omitted).

The three elements "necessary to satisfy the irreducible constitutional minimum of standing" are

> (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* (citing *United States v. Hays*, 515 U.S. 737, 742–43 (1995)).

## DISCUSSION

Mr. Powell brings various claims against Wells Fargo and PNC Bank, including claims for discrimination, alleged violations of the MHA application and handbook, and alleged violations of the Real Estate Settlement Procedures Act and the Consumer Financial Protection Bureau's promulgated rules. The defendants, in turn, move to dismiss the complaint for two separate reasons. First, they argue that Mr. Powell lacks standing to bring his claims. Second, they argue that the allegations in the complaint are insufficient to support Mr. Powell's causes of action. Because the question of standing is jurisdictional, the Court addresses it first. And because the Court concludes that Mr. Powell lacks standing to bring his claims, the Court does not discuss the defendants' other arguments in favor of dismissal.

A motion to dismiss attacking a claim's justiciability is typically brought pursuant to Federal Rule 12(b)(1). *See id.* at 188 (reviewing Rule 12(b)(1) motion to dismiss for lack of standing). Here, although Wells Fargo's and PNC Banks's motion to dismiss only discusses Rule

12(b)(6)—which implicates a plaintiff's failure to state a claim—"the Court can, and does, construe this as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1)." *Hufnagel v. Ocwen Loan Servicing, LLC*, No. 16-189, 2016 WL 7444973, at *3 (C.D. Cal. Apr. 1, 2016) (citing *Park– Kim v. Daikin Indus., Ltd.*, No. 15-9523, 2016 WL 1069035, at *3 n.3 (C.D. Cal. Mar. 17, 2016)); *see also Democracy Rising PA v. Celluci*, 603 F. Supp. 2d 780, 788 n.10 (M.D. Pa. 2009), *aff'd*, 380 F. App'x 155 (3d Cir. 2010) ("Defendants' motion to dismiss does not explicitly invoke Rule 12(b)(1), but the court will construe the standing, ripeness, and mootness arguments as arising under Rule 12(b)(1).").

There are two types of challenges under Rule 12(b)(1): a "facial attack" or a "factual attack." *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357–58 (3d Cir. 2014) (citations and quotations omitted).

> A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present. Such an attack can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint. A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case—and here the District Court may look beyond the pleadings to ascertain the facts—do not support the asserted jurisdiction. . . . In sum, a facial attack contests the sufficiency of the pleadings, whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites.

*Id.* (citations and quotations omitted).

Here, Wells Fargo's and PNC Bank's motion raises a factual attack. Citing to bankruptcy court records (which they attached to their moving papers),[3] the defendants argue that Mr. Powell

---

[3] Because this is a factual challenge to standing, the Court can and does look to the bankruptcy-related documents attached to the defendants' motion to dismiss. *See Constitution*

7

lacks standing to bring his current claims because, *after* the at-issue claims accrued but *before* initiating this action, Mr. Powell filed a Chapter 7 Bankruptcy action, "[u]pon the filing of [which], the [bankruptcy] estate [became] comprised of all property of the debtor *including all legal and equitable interests of the debtor*, unless the property [wa]s specifically excluded." *Krank v. Utica Mut. Ins. Co.*, 109 B.R. 668, 669 (E.D. Pa. 1990), *aff'd*, 908 F.2d 962 (3d Cir. 1990) (citing 11 U.S.C. § 541) (emphasis added).

Mr. Powell's at-issue claims accrued at earliest on November 30, 2016, when Wells Fargo rejected Mr. Powell's MHA application, and at latest on February 16, 2017, when Wells Fargo substantively responded to Mr. Powell's attempt to appeal the rejection of his MHA application. *See supra* p. 3; *see also In re The Duplan Corp.*, 212 F.3d 144, 151 (2d Cir. 2000) ("A claim arises for purposes of bankruptcy when the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation under the relevant non-bankruptcy law.") (citations and quotations omitted); *Anderson v. Acme Markets, Inc.*, 287 B.R. 624, 629–30 (E.D. Pa. 2002) (concluding plaintiff's employment claims under 42 U.S.C. §§ 1981 and 1985(3) accrued when the claims became ascertainable, i.e., the "date of the alleged adverse employment action").

Mr. Powell initiated his first Chapter 7 Bankruptcy Action on March 10, 2017. *See* Mot. to Dismiss, Ex. G.

---

*Party of Pennsylvania*, 757 F.3d at 357–58; *see also Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982) ("[Defendant's] motion was supported by a sworn statement of facts. It therefore must be construed as a factual, rather than a facial attack."). The Court takes judicial notice of the bankruptcy documents. *See Conklin v. Anthou*, 495 F. App'x 257, 260, n.1 (3d Cir. 2012) (taking judicial notice of bankruptcy proceedings); *McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d Cir. 2009) (courts may take judicial notice of "matters of public record.").

Once Mr. Powell initiated a bankruptcy proceeding, "title to [accrued] cause[s] of action vested in plaintiff['s] trustee in bankruptcy as of . . . the date of the bankrupt['s] . . . petition[,] meaning that as of that date, title to those causes of action "is an asset not of plaintiff[] but of the bankruptcy estate." *Riverside Mem'l Mausoleum, Inc. v. Umet Tr.*, 469 F. Supp. 643, 644 (E.D. Pa. 1979). "That a bankrupt cannot bring suit on a right of action that has vested in his trustee, absent abandonment of the cause of action by the trustee or specific approval by the bankruptcy court of such a suit, is certain. Thus, [a] plaintiff[] may maintain [an] action only if [the bankruptcy trustee's] abandonment or authorization can be proven." *Id.* (citation omitted). But where "the debtor fails to list a claim as an asset [in its bankruptcy schedule of assets], the trustee cannot abandon the claim because he or she will have had no opportunity to determine whether it will benefit the estate. In such circumstances, the debtor may not claim abandonment and seek to enforce the claim after discharge[.]" *Krank*, 109 B.R. at 669. The "failure to schedule" is "fatal" to a plaintiff's ability to subsequently pursue that claim. *Hutchins v. I.R.S.*, 67 F.3d 40, 43 (3d Cir. 1995). "[A]n asset must be properly scheduled in order to pass to the debtor through abandonment under 11 U.S.C. § 554." *Id.* (citation omitted).

Here, it is indisputable that Mr. Powell did not list or otherwise identify the at-issue claims on his bankruptcy schedule. On Mr. Powell's bankruptcy petition, he listed "no" assets that included "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment[.]" Mot. to Dismiss, Ex. H. The bankruptcy petition explicitly identified "rights to sue" as an example of an asset that Mr. Powell should have identified on this portion of his petition. *Id.* Mr. Powell does not argue that he identified the at-issue claims as a potential asset in his bankruptcy petition.[4] "Because [Mr. Powell] failed to schedule or otherwise identify his . . . claims

---

[4] In his opposition to the motion to dismiss, Mr. Powell devotes a single sentence to the defendants' argument that Mr. Powell lacks standing. Mr. Powell states: "PLAINTIFF has

9

in his amended Chapter 7 petition, and because those claims are part of the bankruptcy estate, only the Trustee in Bankruptcy, as the sole representative of the estate, has standing to pursue the claims." *Anderson*, 287 B.R. at 631 (citations omitted); *see also Krank*, 109 B.R. at 669 (granting motion for summary judgment for lack of standing because a "plaintiff may not assert his cause of action in the absence of proof of abandonment: his cause of action remains an asset of the estate. To hold otherwise would allow [a] plaintiff to conceal potential assets from his creditors.").[5] Therefore, Mr. Powell's failure to schedule his interest in this litigation establishes that only the bankruptcy trustee, and not Mr. Powell, has a justiciable interest in the at-issue claims.[6]

---

presented no claims prior to the filing of PLAINTIFF'S Chapter 7 Bankruptcy Petition." Opp. to Motion to Dismiss at 3. Although Mr. Powell did not initiate his at-issue claims prior to filing his bankruptcy petition, the claims nonetheless *accrued* before he filed the bankruptcy petition, *see supra* p. 8, and the petition made clear that Mr. Powell was to identify potential legal claims "whether or not [he had] filed a lawsuit." *See* Mot. to Dismiss, Ex. H; *see also Cain v. Hyatt*, 101 B.R. 440, 441–42 (E.D. Pa. 1989) ("Courts have uniformly held that the broad scope of [11 U.S.C.] § 541 encompasses causes of action existing at the time of the commencement of the bankruptcy action.") (collecting cases).

[5] Courts in other circuits have also applied this rule. *See Calabrese v. McHugh*, 170 F. Supp. 2d 243, 256 (D. Conn. 2001) ("Where an unscheduled claim remains the property of the bankruptcy estate, a debtor lacks standing to pursue that claim after emerging from bankruptcy and the claim must be dismissed.") (citations omitted); *Rosenshein v. Kleban*, 918 F. Supp. 98, 103 (S.D.N.Y.1996) ("Courts have held that because an unscheduled claim remains the property of the bankruptcy estate, the debtor lacks standing to pursue the claims after emerging from bankruptcy, and the claims must be dismissed."); *Brooks v. Beatty*, 25 F.3d 1037, at *3 (1st Cir. 1994) (Table) (holding that plaintiff lacked standing to prosecute claims because his "cause of action against ComFed should have been scheduled as an asset in her chapter 7 proceeding. . . . [B]ecause the ComFed action was not scheduled as an asset, it was never abandoned by the chapter 7 trustee.").

[6] The eventual termination of Mr. Powell's bankruptcy action (and subsequent bankruptcy proceedings) does not excuse his failure to schedule his interest in this litigation. *See McCain v. D.C.*, 206 F. Supp. 3d 576, 582 (D.D.C. 2016), *aff'd*, No. 16-7123, 2017 WL 2373061 (D.C. Cir. Apr. 11, 2017) ("[B]ecause unscheduled claims are neither 'abandoned' nor 'administered,' they remain with the estate even after the close of the case.") (citing *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004); *Britto v. Bank of Am., N.A.*, No. 13-03508, 2013 WL 5587400, at *2 (N.D. Cal. Oct. 10, 2013) ("Any unscheduled assets, *i.e.*, assets the claimant fails to list during the bankruptcy proceedings, are permanently held by the bankruptcy estate at the close of the proceedings.") (citing 11 U.S.C. § 554(d); *In re Costello*, 255 B.R. 110, 113 (Bankr. E.D.N.Y. 2000) ("Assets which Callihan had, as of the date of filing, but did not schedule, were not

Because Mr. Powell lacks standing to bring the at-issue claims, the Court must grant the motion to dismiss without prejudice. *See Schafer v. Decision One Mortg. Corp.,* No, 08–5653, 2009 WL 1886071, at *7 (E.D. Pa. June 30, 2009) ("Further, the Court reminds the parties that Ms. Schafer's Complaint was dismissed without prejudice to the right of the bankruptcy trustee to pursue such a claim as a party-plaintiff, or the right of Ms. Schafer to re-file a complaint in the event that her claims are abandoned by the bankruptcy trustee."); *see also Barris v. Midland Funding LLC*, No. 14-6469, 2015 WL 519176, at *3 (D.N.J. Feb. 9, 2015) (dismissing without prejudice plaintiff's claims because only bankruptcy trustee had standing to sue for claims that trustee did not abandon).

## CONCLUSION

For the foregoing reasons, the motion to dismiss is granted without prejudice. An appropriate order follows.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

abandoned to her upon closing of the case.") (citation omitted); *Phoenix Petroleum Co. v. United States*, 215 F.3d 1345 (Fed. Cir. 1999), at *5 (Table) ("[U]nscheduled property remains with the estate, and therefore does not vest in the debtor, at the close of bankruptcy. The debtor consequently lacks standing to pursue unscheduled claims.").